(No. 77-CC-2248–

DOUGLAS PRICE, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 20, 1985.*

ROBERT J. LEON, for Claimant.

NEIL F. HARTIGAN, Attorney General (ROBERT SKLAMBERG, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This case arose from an accident which occurred on April 18, 1977, on Sauk Trail at its intersection with Richton Road in Richton Park, Cook County, Illinois. Claimant Douglas Price was driving a 1975 Dodge Club Cab pickup truck westbound on Sauk Trail. Respondent Governor's State University owned an International Harvester school bus which was being operated by Patricia O'Connor eastbound on Sauk Trail.

O'Connor was proceeding eastbound and drove into the left-turn-only lane on Sauk Trail in order to make a left turn northbound on to Richton Road. The light was green and she pulled into the intersection. When the light turned yellow, she first spotted the Claimant, who was approximately 100 feet west of the intersection. She estimated Claimant's speed to be 35 m.p.h. at that point.

O'Connor noticed that two cars had already stopped in the south lane of westbound traffic facing her. She noticed that Claimant, now approximately 50 to 60 feet away, appeared to be slowing and she stopped momentarily to see if he'd stop. The light changed to red and O'Connor attempted to complete her turn. At this point the collision occurred.

Claimant testified that he was traveling 35 m.p.h. immediately prior to the accident. However, he claims that he reduced his speed to 25 m.p.h. when he entered the intersection. The posted speed limit for Sauk Trail at the accident location is 30 m.p.h. Claimant stated that the light for him was yellow at the time of the accident. Claimant testified that there was another school bus situated in the eastbound left-turn lane of Sauk Trail which obstructed his view of traffic in the intersection from the time he was at the crest of the hill to the point of the accident.

The testimony regarding Claimant's speed at the time of the accident is conflicting. Speed, therefore, has become a question of fact for this Court to consider. Claimant, Price, on direct examination, testified at trial that he was traveling 35 miles per hour immediately prior to the accident, but that he reduced his speed to 25 miles per hour when he entered the intersection. The speed limit applicable to the subject portion of Sauk Trail was 30 m.p.h.

On cross-examination the Claimant stated the following:

"Q. Now, at time as you were approaching the intersection, did you increase or decrease or stay at the same speed?
A. I was at a steady, even speed.
Q. You never reduced your speed prior to reaching the intersection?
A. No."

The weight of the evidence refutes Claimant's assertions as to his speed and reveals that he was traveling in excess of the speed limit at the time of the accident.

Patricia O'Connor estimated Claimant's speed to be 35 m.p.h. when she first spotted him at the crest of the hill approximately 100 feet away from her. She

attempted to complete her turn only after the two westbound cars, already at the intersection, had stopped and the Claimant's vehicle appeared to be slowing. When the light changed to red, she attempted to complete her turn.

The Illinois Motor Vehicle Code, section 11-601, states in pertinent part:

"The fact that the speed of a vehicle does not exceed the applicable maximum speed limits does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection . . ." Ill. Rev. Stat. 1983, ch. 95½, par. 11—601(a).

Claimant had a duty to reduce his speed because he was approaching an intersection. In the case of *Kocour v. Mills* (1959), 23 Ill. App. 2d 305, 156 N.E.2d 241, a motorist is,

"under a duty to anticipate that the stop light (controlling traffic at the intersection) might change. . . . He (defendant) should have had his automobile under such control that he could have stopped it without running into other traffic lawfully upon the highway and lawfully stopped at the intersection." (*Supra*, 311). See also, *Landess v. Mahler* (1938), 295 Ill. App. 489, 15 N.E.2d 13.

In the instant case, Claimant had a duty to anticipate that the light might change. Although there is some discrepancy over whether the light was red or yellow at the time of the collision, the light did, in fact, change. Further, Claimant admitted that his view of traffic in the intersection was entirely obstructed as he approached. It is apparent that Claimant was under a duty to decrease his speed as he approached the intersection and to keep his vehicle under such control that he could have stopped it without striking the school bus.

In *Lode v. Mercano* (1979), 77 Ill. App. 3d 150, 395 N.E.2d 1014, the court stated:

"The duty of a driver at the intersection controlled by traffic control signals has been codified in section 11—306 of the Illinois Vehicle Code. Vehicular traffic facing a green light may proceed through the intersection but *must yield the right-of-way to other vehicles* and pedestrians *lawfully within the intersection.* . . . A motorist's right of way is not absolute. He must drive, as a prudent person would, to avoid a collision when danger is discovered or should have been discovered by the exercise of reasonable care." (Emphasis added.) 77 Ill. App. 3d 150, 154. See also *Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 209 N.E.2d 12.

The matter was also addressed in *DePaepe v. Walter* (1979), 68 Ill. App. 3d 757, 386 N.E.2d 875:

"Even if it be presumed for sake of argument that plaintiff entered the intersection on a green light and defendant went through a red light, the question of liability remained to be decided by the jury.

A driver cannot rely blindly on a green light. (Citing *Prignano.*) A green light does not give an absolute right to enter an intersection without maintaining a proper lookout and does not prevent a finding of negligence against a driver." 68 Ill. App. 3d 757, 760.

O'Connor was not available to testify at the hearing in this cause, but her prior discovery deposition of August 11, 1978, was admitted into evidence without objection.

The deposition of O'Connor clearly supports the fact that she observed Claimant's vehicle approaching approximately 100 feet prior to the intersection. When the traffic control light changed from green to yellow, she

". . . stopped momentarily to see if Price was going to stop. He appeared to be slowing and I continued on and he sped up at the same point I hit the gas . . ."

In *Brostoff v. Maida* (1977), 45 Ill. App. 3d 871, 360 N.E.2d 568, the court stated:

"Motorists who have a green light may assume the intersecting traffic will stop. (*Yehnich v. Capalorgo* (1962), 38 Ill. App. 2d 199, 186 N.E.2d 777.) Although the right-of-way is given to the motorists having the green light, plaintiffs correctly point out that the preferred motorist is not excused from acting with reasonable care."

O'Connor also had the duty to maintain a proper lookout, and the failure to do so may constitute

negligence even where she had the right-of-way over another motorist with whom she might collide. As such, the question of negligence and proximate cause of the accident is properly a question for the finder of fact.

The weight of the evidence supports the conclusion that both drivers were negligent for failing to exercise reasonable caution and care while in the intersection.

The Claimant sought damages in the amount of $15,000.00, but the testimony adduced by Claimant established that the out-of-pocket damages were $9,547.76. The damages are premised on the total loss of the 1975 Dodge pickup truck. Although the Claimant did not deduct any amounts for the 1½ years of depreciation on the 1975 Dodge pickup, this Court finds that the amount of $3,000.00 is a fair and reasonable deduction for 1½ years of depreciation.

In conclusion, this Court finds that the driver of the bus was negligent and that the Claimant was 50% contributorily negligent. The Court further finds and enters its award to the Claimant in the amount of $3,273.88, being the sum of one-half of the $6,547.76 depreciated value of the 1975 Dodge pickup truck.